[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION AND JUDGMENT ENTRY
* * * * *
This is an appeal from a judgment of the Williams County Court of Common Pleas which granted summary judgment in favor of defendants-appellees, Harborside of Ohio Limited Partnership, et al. ("Harborside"), in an employer intentional tort action filed by plaintiffs-appellants, Lori A. Breininger, et al.
Harborside is a Massachusetts partnership licensed to do business in the state of Ohio by operating a health care facility known at all times relevant hereto as the Bryan Nursing Care Center ("Bryan") in Bryan, Ohio. In July 1992, Lori Breininger began working at Bryan as a certified nursing assistant. Her duties included lifting and moving patients both manually and with the use of a mechanical device known as a Hoyer lift. Prior to her employment, however, Breininger was required to complete a three-week training program which included instruction in the use of the Hoyer lift and in the manual lifting of patients using one, two or three people.
On the evening of February 7 and the morning of February 8, 1994, Breininger was working the third shift on Wing 4 at Bryan. At approximately 3:00 a.m., Delma Ratliff, a nurse on Wing 3, asked Breininger for her assistance in helping a patient who had fallen to the floor while two aides were assisting her to the bathroom. Breininger was unfamiliar with the patients on Wing 3, but agreed to assist. The patient who had fallen was Carolyn Shadel who weighed approximately three hundred pounds. Upon seeing Shadel on the floor, Breininger asked Ratliff where the Hoyer lift was. Ratliff responded that they could not use the Hoyer lift and that they would have to lift Shadel off the floor using a two-person lift. Breininger then braced herself under Shadel's left arm while Ratliff braced herself under Shadel's right arm. In addition, another nurse, Cathy Ordway, braced Shadel's feet so that they would not slip. Breininger and Ratliff then lifted Shadel straight up into a standing position without incident. After the first lift, the nurses had to lift Shadel a second time to assist her to a "potty chair." On that second lift, Breininger felt a sharp pain in her back. Throughout the remainder of her shift, Breininger's back began to stiffen, and later that day, after her shift had ended, she was taken to the hospital. Ultimately, it was determined that Breininger had sustained a herniation of a vertebral disc which required a discectomy.
On January 31, 1996, Breininger, her husband and three children, filed a complaint against Harborside and five John Does, asserting that her injuries were the result of the intentionally tortious conduct of those defendants. Specifically, Breininger asserted that lifting and moving extremely heavy and/or obese patients without the use of a Hoyer lift constituted a dangerous condition within appellee's business operation, that appellees knew that harm to Breininger was substantially certain to occur if she was required to manually lift and move such patients, and that in spite of this knowledge, appellees required Breininger to lift and move an extremely heavy patient without the aid of a Hoyer lift. In addition, Breininger's husband and children asserted claims for the loss of society, care, consortium and services of Breininger. On February 18, 1997, Harborside filed a motion for summary judgment supported by the depositions of Breininger and Cathy Ordway, and the affidavits of Randi M. Kiphen, the administrator of Bryan, and Herminea Aguilar, a unit manager of Bryan. Harborside argued that the undisputed facts established that the procedure used to lift Shadel was not dangerous, that the alleged injury to Breininger was not substantially certain to occur and that Harborside did not act to require Breininger to perform a dangerous task. Appellants responded with a memorandum in opposition supported by the depositions of Breininger and Ordway. In addition, appellants cited to the deposition of a Janet Connors, but that deposition was never filed with the court. On April 8, 1997, the trial court filed its decision and order granting Harborside's motion for summary judgment. It is from that judgment that appellants now appeal raising the following assignment of error:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANTS IN GRANTING APPELLEE HARBORSIDE'S MOTION FOR SUMMARY JUDGMENT."
In reviewing a ruling on a summary judgment motion, this court must apply the same standard as the trial court. LoraineNatl. Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). Moreover, the moving party is required to "specifically delineate the basis upon which summary judgment is sought * * *." Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, syllabus. Once the moving party sets forth specific reasons for summary judgment, the nonmoving party bears a reciprocal burden to produce evidence on any element essential to his case for which he bears the burden of proof at trial. Celotex Corp. v.Catrett (1986), 477 U.S. 317, 322-323.
Generally, all actions for injuries sustained in the course of employment must be brought under Ohio's Workers' Compensation Statute. An employee, however, may recover at common law for injuries sustained as a result of the intentional conduct of his employer. See Van Fossen v. Babcock Wilcox Co. (1988),36 Ohio St.3d 100; Kunkler v. Goodyear Tire Rubber Co. (1988),36 Ohio St.3d 135; and Blankenship v. Cincinnati MilacronChemicals, Inc. (1982), 69 Ohio St.2d 608. In order to establish intent for the purpose of proving an employer intentional tort, the employee must demonstrate:
 "* * * (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." Fyffe v. Jeno's, Inc.
(1991), 59 Ohio St.3d 115, paragraph one of the syllabus.
As this court stated in Richie v. Rogers Cartage Co.
(1993), 89 Ohio App.3d 638, 644, citing Fyffe at 117: "The difficult issue in any employer intentional tort case is the degree of risk the employer can take before its conduct is legally considered to be, or can legally be inferred to be, an intentional act to injure. The employee need not prove that the employer had an actual subjective intent to cause the injury sustained or that the employer knew that the exact injury sustained would occur." However, the "mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent." Fyffe, at paragraph two of the syllabus. Rather, it must be shown that the probability of certain consequences is such that the "employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds * * *." Id.
What constitutes a "substantially certain" result will vary from case to case based on the facts involved. As the Supreme Court of Ohio noted in Van Fossen, supra, at 117:
 "There are many acts within the business or manufacturing process which involve the existence of dangers, where management fails to take corrective action, institute safety measures, or properly warn the employees of the risks involved. Such conduct may be characterized as gross negligence or wantonness on the part of the employer. However, in view of the overall purposes of our Workers' Compensation Act, such conduct should not be classified as an `intentional tort' * * *."
Accordingly, the employer intentional tort cause of action is limited to egregious cases. Sanek v. Duracote Corp. (1989),43 Ohio St.3d 169, 172.
In the present case, the undisputed evidence failed to raise a genuine issue of material fact as to whether Harborside knew that harm to Breininger was substantially certain to occur if she manually lifted Shadel. Although Harborside's answers to interrogatories revealed that prior to appellant's injury, two other employees had sustained minor injuries while lifting this patient, Herminea Aguilar, the unit manager for Bryan, stated by way of affidavit that at the time of Breininger's injury, Carolyn Shadel was lifted eight to ten times per day. This amounts to approximately two hundred seventy times per month. Breininger testified that Harborside had trained her how to properly lift patients using one, two or three persons. Construing this evidence in a light most favorable to appellants, we must presume that this training was in part meant to protect the nursing assistant from injury. Breininger stated that she and the other nurses lifted Shadel properly. Breininger, however, further admitted in her deposition that once she and Ratliff lifted Shadel into a standing position, she knew that it was more weight than she could handle. The undisputed testimony of Cathy Ordway was that nursing assistants are trained to use their judgment in assessing their own abilities as far as lifting patients. If a nursing assistant determines that he or she cannot lift a particular patient, he or she is to get someone else to assist. Finally, Breininger admitted that the injury occurred while lifting Shadel from a standing position onto a potty chair, not while lifting her from the floor, and that the Hoyer lift would have been of no use in moving Shadel from a standing position to the chair. In our view, the undisputed evidence presented to the court below established, at most, the knowledge and appreciation of a risk, not a substantial certainty of harm. That is, appellants failed to establish a genuine issue of material fact with respect to whether Harborside knew that if appellant was required to assist in manually lifting Shadel, then harm to Breininger would be a substantial certainty.
Accordingly, the trial court did not err in granting Harborside's motion for summary judgment and the sole assignment of error is not well-taken.
On consideration whereof, the court finds that substantial justice has been done the party complaining and the judgment of the Williams County Court of Common Pleas is affirmed. Appellants are ordered to pay the court costs of this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 7/1/92.
 ______________________________ George M. Glasser, J.
JUDGE
 ______________________________ Melvin L. Resnick, J.
JUDGE
 _______________________________ Richard W. Knepper, J.
JUDGE
CONCUR.